(Slip Opinion)

# Responsibility for Electronic Presidential Records on Hardware of the Executive Office of the President After a Presidential Transition

Under the Presidential Records Act, the Archivist of the United States assumes responsibility for the custody and control of, and access to, an outgoing President's electronic presidential records that temporarily remain on Executive Office of the President hardware after the end of the outgoing President's term.

January 15, 2021

MEMORANDUM OPINION FOR THE
DEPUTY COUNSEL TO THE PRESIDENT

The Presidential Records Act of 1978 ("PRA") provides that, "[u]pon the conclusion of a President's term of office," "the Archivist of the United States shall assume responsibility for the custody, control, and preservation of, and access to, the Presidential records of that President." 44 U.S.C. § 2203(g)(1). You have asked whether the Archivist of the United States ("Archivist") assumes responsibility for electronic presidential records that temporarily remain on Executive Office of the President ("EOP") data-storage devices and cloud storage ("EOP hardware") after a presidential transition. Consistent with the Archivist's and the EOP's longstanding interpretation and practice, we conclude that the Archivist, not the EOP, has responsibility for the custody and control of, and access to, such records. Nothing in the PRA purports to eliminate these records' status as presidential records subject to the PRA merely because the records or duplicates of them remain on EOP hardware pending the completion of their transfer to the National Archives and Records Administration ("NARA"). Accordingly, the PRA will govern access to and disclosure of the outgoing President's electronic presidential records beginning at noon on January 20, 2021, even if they temporarily remain on EOP hardware after that time.*

---

\* In considering this question, we consulted with the General Counsel of NARA. *See* E-mail for Devin A. DeBacker, Deputy Assistant Attorney General, Office of Legal Counsel, from Gary M. Stern, General Counsel, National Archives and Records Administration (Dec. 2, 2020, 11:09 AM).

## I.

Congress enacted the PRA in 1978 to ensure the preservation of and public access to the official records of the President. *See* Presidential Records Act of 1978, Pub. L. No. 95-591, 92 Stat. 2523 (codified as amended at 44 U.S.C. §§ 2201–2209); *see generally Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 445–46 (1977) (rejecting separation of powers challenge to statute directing the Administrator of General Services to take control of certain records of former President Nixon); Letter for James T. McIntyre, Director, Office of Management and Budget, from Patricia M. Wald, Assistant Attorney General, Office of Legislative Affairs at 4 (Feb. 3, 1978) (observing that "[a] decision to place Presidential materials in the hands of the Archivist of the United States seems to go no further in impinging upon other constitutional principles than was sanctioned by the Supreme Court" in *Nixon*). The Act defines "Presidential records" to include:

> documentary materials, or any reasonably segregable portion thereof, created or received by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise or assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President.

44 U.S.C. § 2201(2). The PRA provides for public ownership of such records, *id.* § 2202, and sets forth detailed procedures governing the retention of and access to those records, *id.* §§ 2203–2205.

The PRA also addresses the custody of presidential records upon a presidential transition. Before the transition, the President has exclusive responsibility for the custody and control of presidential records. Even if the President physically transfers presidential records to NARA during his Administration, the PRA states that this "exclusive[] responsib[ility]" is unaffected. *Id.* § 2203(f). At the end of the President's term, however, the PRA provides that the Archivist "shall assume responsibility for the custody, control, and preservation of, and access to, the Presidential records of that President." *Id.* § 2203(g)(1). The Archivist must then "deposit all such Presidential records in a Presidential archival depository" and may designate, upon consultation with the former President, an

individual to be "responsible for the care and preservation of such records." *Id.* § 2203(g)(2).

We understand from NARA that the three previous presidential transitions each involved a lengthy process for the EOP to complete the transfer of the outgoing President's electronic presidential records to NARA. In two of the previous three transitions, a substantial quantity of the outgoing President's electronic presidential records temporarily remained on EOP hardware for months after the incoming President took office until the transfer of those records to NARA was complete. As we understand the process, NARA first receives copies of the outgoing President's electronic records. Once NARA validates that it has a complete copy of the outgoing President's electronic records, NARA instructs the EOP to delete the electronic records from EOP hardware, leaving NARA with the sole remaining copy. *Cf.* 36 C.F.R. § 1235.44(a) ("Each agency must retain a copy of permanent electronic records that it transfers to NARA until it receives official notification that NARA has assumed responsibility for continuing preservation of the records."). At that point, the transfer of those records to NARA is complete.

You have asked whether the Archivist has responsibility for custody and control of, and access to, the outgoing President's electronic records, even if such records temporarily remain on EOP hardware until the completion of their transfer to NARA. If the Archivist does have responsibility during that period for those records, then the PRA would govern access to and disclosure of the records, including the incoming President's access to the records. *See, e.g.*, 44 U.S.C. § 2205(2)(B).

## II.

Consistent with NARA's longstanding view and practice, we conclude that the Archivist assumes custody and control of electronic presidential records of an outgoing President that remain on EOP hardware after the end of the outgoing President's term. The electronic EOP records are "Presidential records" governed by the PRA at the time they are created. *See* 44 U.S.C. § 2201(2) (defining "Presidential records" to include "documentary materials" created or received in the course of conducting official EOP activities). Nothing in the PRA eliminates their status as "Presidential records" subject to the PRA, or makes them presidential records of the incoming Administration, merely because they remain temporarily on EOP hardware following the change in Administrations.

Although the definition of "Presidential records" excludes "extra copies of documents produced only for convenience of reference, when such copies are clearly so identified," *id.* § 2201(2)(B), that exception does not transform electronic presidential records into non-presidential records just because copies of them have been transferred to NARA for their permanent retention. The document duplicates remaining on EOP hardware were the original presidential records produced in the ordinary course of the EOP's activities, not copies "produced only for convenience of reference" that are "clearly so identified." *Id.* Indeed, if the temporary duplicates were mere convenience copies, then they would not constitute "Presidential records" that have to be maintained under the PRA and could be destroyed before NARA has verified that it has a complete copy—which would obviously frustrate the PRA's purpose in preserving and ensuring access to them. *Cf. id.* § 2202 ("The United States shall reserve and retain complete ownership, possession, and control of Presidential records; and such records shall be administered in accordance with the provisions of this chapter.").

This interpretation of the PRA is consistent with NARA's and the EOP's longstanding interpretation and administration of the statute with respect to both paper and electronic presidential records. According to NARA, EOP personnel have regularly located prior Administrations' paper presidential records accidentally left behind within the EOP. When this has happened, EOP personnel have treated them as presidential records subject to the Archivist's control and promptly transferred them to NARA. And NARA and the EOP have previously entered into memoranda of understanding confirming that the Archivist has responsibility for, and the PRA continues to govern, an outgoing Administration's presidential records that remain in EOP custody after the end of the President's term. *See, e.g.*, Memorandum of Understanding Regarding the Work to Complete Transfer of George W. Bush Electronic Records at 2–3 (Jan. 16, 2009), https://www.archives.gov/files/presidential-libraries/laws/access/bush-email-restoration.pdf ("NARA by law shall assume full legal custody of all George W. Bush Administration PRA records at noon January 20, 2009. . . . Any access to PRA records by [the EOP Office of Administration ("OA")] staff, OA contractors, or any other party shall be controlled exclusively by NARA and shall be governed by the PRA, NARA regulations, and Executive Order 13233 (or any successor order). These

records shall remain George W. Bush Presidential and Cheney Vice Presidential records after 12:00 noon, January 20, 2009, notwithstanding their physical location or the limited access to them [to facilitate transfer to NARA] by OA, OA contractors, or third parties[.]”).

The Archivist therefore will “assume responsibility” for the outgoing President’s electronic presidential records that remain on EOP hardware “[u]pon the conclusion of [the outgoing] President’s term of office,” 44 U.S.C. § 2203(g)(1)—at noon on January 20, 2021—except to the extent that convenience copies are provided to the incoming Administration by the outgoing Administration, *see id.* § 2201(2)(B). Even though electronic presidential records will temporarily remain physically situated on EOP property, the Archivist will have legal responsibility for the “custody, control, and preservation of, and access to” the records, *id.* § 2203(g)(1), just as the President can have responsibility for certain records in NARA’s possession under 44 U.S.C. § 2203(f). Consequently, the incoming Administration’s access to electronic presidential records of the outgoing Administration will be subject to the Archivist’s general control and the PRA’s provisions. For instance, with respect to specific records over which the outgoing President has restricted access, *see id.* § 2204, the records will be made available to the incoming President “if such records contain information that is needed for the conduct of current business of the incumbent President’s office and that is not otherwise available,” *id.* § 2205(2)(B). The incumbent President would need to request access to such records from NARA notwithstanding the fact that they remain physically present on EOP property. NARA would then notify the former President of the Archivist’s intent to disclose the records, and the former President could assert a claim of constitutionally based privilege, subject to the incumbent President’s determination whether to uphold that privilege. *See* 36 C.F.R. § 1270.44; Exec. Order No. 13,489, § 4 (Jan. 21, 2009), 74 Fed. Reg. 4669, 4670 (Jan. 26, 2009).

## III.

For these reasons, we conclude that the Archivist, not the EOP, has “responsibility” for the custody and control of, and access to, an outgoing President’s electronic records under the PRA, even if such records physi-

cally remain on EOP hardware at the conclusion of the outgoing President's term. 44 U.S.C. § 2203(g)(1).

DEVIN A. DEBACKER
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
